IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | Case No. 4:13CR55 |
| DAVID MERCADO SAGUIL | § | |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE DENYING DEFENDANT'S MOTION FOR SUPPRESSION OF EVIDENCE

This matter having been referred by the Honorable Richard A. Schell, the Court has considered Defendant's Motion for Suppression of Evidence (Dkt. 20). After considering the evidence presented and the arguments of counsel at the hearing held on September 10, 2013, the Court finds that the motion should be DENIED.

Defendant David Mercado Saguil is charged in this matter with the production of child pornography in violation of 18 U.S.C. § 2251(a) and (e). In his motion, Defendant seeks to suppress all physical and documentary evidence collected during the January 29, 2013, search of his home. Defendant argues that the affidavit in support of the state search warrant lacked probable cause. Specifically, Defendant argues that certain information contained in the affidavit was obtained through a warrantless, illegal search and seizure and that, without this ill-gotten information, the affidavit does not establish probable cause for a search warrant. Defendant also argues that the

1

affidavit failed to establish probable cause because his wife was not a credible informant and the information she obtained from her daughter was not credible.

In its written response, the Government argues that the affidavit does contain sufficient probable cause; that even if the affidavit does not contain probable cause, the *Leon* "Good Faith" exception applies; and that even if the "Good Faith" exception does not apply, a search warrant was not necessary because the Defendant's wife consented to the search (Dkt. 24).

The Court has considered the written response, as well as the arguments and evidence presented at the hearing in making its findings herein.

## **FACTUAL BACKGROUND & EVIDENCE PRESENTED**

On January 29, 2013, Frisco Police responded to a domestic disturbance call placed by Defendant's wife and originating from the residence Defendant shared with his wife and her three children. Upon arriving, the officers separated Defendant from his wife and spoke with them individually. Defendant's wife informed one of the responding officers that her fifteen-year-old daughter told her the night before that Defendant had been sexually abusing her and had been making video recordings of the abuse. Defendant's wife further informed the officer that she had located and viewed multiple digital video discs ("DVDs") containing the video footage of Defendant engaged in sexual conduct with her minor daughter. She then indicated that after viewing the DVDs, she hid them, along with Defendant's laptop, from Defendant.[1]

---

[1] This brief summary of the facts is taken from the parties written submissions and testimony presented at the hearing.

2

All parties agree that Frisco Police executed a search warrant on Defendant's residence on January 29, 2013. All parties further agree that Defendant was never formally placed under arrest on the evening in question. The circumstances surrounding the issuance of the search warrant are, however, disputed. Thus, the Court has reviewed the written briefs submitted by each party and considered the arguments and evidence presented at the September 10, 2013, hearing.

At the hearing, the Government presented the testimony of Detective Wade Hornsby, the detective who obtained and executed the warrant to search Defendant's residence. Hornsby testified that, on January 29, 2013, he spoke to the responding officers at the scene and used the information relayed to him by those officers to draft his search warrant affidavit. On cross examination, Hornsby indicated that he spoke with Officer Thomas Presley and that Presley indicated to him that Defendant had attempted to remove from the scene a number of compact discs by concealing them in a jacket.

The Government then presented testimony from Officer Thomas Presley, the officer who seized the discs from Defendant as Defendant attempted to remove them from the scene. Presley testified that, on the morning in question, he was involved in securing the scene of the domestic disturbance call. Presley testified that, upon arriving on the scene, Presley was made aware of the allegations of sexual abuse and the possibility that some of the abuse may have been recorded and stored on several DVDs. Presley testified that he was given instructions that Defendant was allowed to leave to go to work, but that he would not be allowed to take his own vehicle.

According to Presley, as Defendant was preparing to leave, Presley observed Defendant retrieve a jacket from the passenger side of a vehicle parked in the rear driveway of the residence.

3

Presley indicated that, as Defendant was walking away with the jacket, Defendant handled it in an unusual manner–carrying it with two hands like a package rather than an article of clothing–and that this oddity caused him to suspect that Defendant might be concealing potential evidence in the jacket.

Presley testified that he then stopped Defendant and asked him for consent to search the jacket. According to Presley, Defendant then handed him the jacket without objection.[2] Presley testified that he then conducted a search of the jacket on the hood of the vehicle as Defendant watched without objection. Folded up within the jacket, Presley found a manilla envelope containing four to five compact discs. The envelope was not sealed when Presley discovered it, and it was not until he looked inside the envelope that he determined that it contained compact discs. According to Presley, he then informed Defendant that the envelope and its contents would not be permitted to leave the scene, but that Defendant himself was permitted the leave. Defendant then left the scene, and Presley did not have another interaction with Defendant.

Presley further testified that, based on the information he had at the time he discovered the discs, he believed they may have evidentiary significance but that he did not know that they were the discs containing the recordings of the abuse. Presley testified that he did not learn the true nature of the discs until the Defendant's wife confirmed that they were the discs containing the recordings of the abuse. Presley also testified that Defendant's wife was present at the home while the officers

---

[2] Although Defendant did not express verbally his consent to the search, Presley interpreted Defendant's voluntary surrender of the jacket as consenting to the search.

4

were there responding to the domestic disturbance call and that she consented to their presence in and at the home. On cross-examination, Presley indicated that his suspicion surrounding Defendant's retrieval of the jacket was further heightened by the fact that, even though it was January, it was not particularly cold out.

The Government then called Detective Olga Chavez of the Frisco Police Department. Detective Chavez indicated that, after Defendant's wife informed one of the officers responding to the domestic disturbance call about the abuse, the officer suggested to the other officers that they step outside onto the front porch to develop a plan of action. Chavez stated that, upon formulating a plan, the officers knocked on the door and were subsequently invited inside by the Defendant's wife. Chavez further testified that, after Defendant left the premises, Defendant's wife not only consented to the search of the residence, but actually surrendered to the police Defendant's laptop for searching.

Defense counsel then called Defendant's wife, Maria Rocio Fonseca. Fonseca testified that, on January 28, 2013, after her daughter told her that Defendant had abused her, she looked for and found four to five compact discs in a manilla envelope, viewed them, and then hid them from Defendant in a cabinet. According to Fonseca, early in the morning on January 29, 2013, Defendant began searching for the discs and became anxious. In response, Fonseca called the Frisco Police Department. Fonseca testified that, when officers arrived, they knocked at the door and she and Defendant let them in. After being inside for approximately five minutes and after Fonseca informed one of the responding officers of the abuse, the officers informed the Defendant and his wife that they were going to step outside to make a call. According to Fonseca, between five and ten minutes

5

later, the officers again knocked on the door and Defendant opened the door to let them in. During the course of her testimony, Fonseca made it clear that, although she was concerned that the officers' presence in her home might wake her sleeping children, she wanted them to be there to investigate the alleged abuse of her daughter. On cross-examination, Fonseca conceded that neither she nor Defendant ever expressed an objection to the officers' continued presence in the home.

Finally, the defense called Defendant to the stand. Defendant testified that when the officers first arrived at his home, he let them inside and they informed him they were responding a disturbance call. Defendant also testified that he let them back inside after the officers stepped outside for ten minutes. Defendant testified that the officers informed him that he would not be able to remove and property from the premises, and escorted him everywhere he went while in the house, and that although he thought he could leave the house at any time he was not allowed to do so. But Defendant also indicated than an officer escorted him to his neighbor's house to ask for a ride to work. Defendant admitted that he did not want the officers to find the discs contained in manilla envelope and that he attempted to remove them from the premises. As Defendant was attempting to remove the discs from the premises by concealing them in his jacket, he claims that Officer Presley stopped him and forcibly took the jacket from him against his will and without his consent.

On cross-examination, Defendant admitted that he never asked the police to leave his house. Defendant stated that, when the police entered his house for the second time, he was fearful that the officers would discover the compact discs and that he actively began attempting to conceal the discs containing the evidence of the crime to prevent the police from locating them despite the fact he

6

knew he was not permitted to remove any property from the premises. With respect to his interaction with Officer Presley, Defendant's contention on the stand was that Officer Presley lied about seeking and obtaining consent to search the jacket and that Presley ripped the jacket from his hands. Defendant nevertheless admits that at no time did he express verbally any objection to Presley searching the jacket–even after Presley took it from him.

## ANALYSIS

The Court first addresses Defendant's argument that the search warrant was invalid. Probable cause is necessary to support the issuance of a valid search warrant. *United States v. Perez*, 484 F.3d 735, 740 (5th Cir. 2007). "Probable cause does not require proof beyond a reasonable doubt, but only a showing of the probability of criminal activity." *United States v. Daniel,* 982 F.2d 146, 151 (5th Cir. 1993). Probable cause is determined through an examination of a totality of the circumstances. *U.S. v. Fields*, 456 F. 3d 519, 523 (5th Cir. 2006). Thus, in determining the validity of a search warrant, a court must "make a practical, common-sense decision as to whether, given all the circumstances set forth in the affidavit before [it] . . . , there is a fair probability that contraband or evidence of a crime will be found at a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332, 76 L. Ed.2d 527 (1983); *United States v. Froman,* 355 F.3d 882, 889 (5th Cir. 2004) (citations omitted).

The Court finds that, having heard the testimony and evidence presented at the hearing, the affidavit to search Defendant's home was valid. Defendant's testimony that Officer Presley forcibly

removed the jacket from him is unpersuasive and lacks credibility. Defendant did not state any verbal objection to the search, and both Fonseca and Presley's testimony was that the officers' weapons remained holstered and the search was orderly. Nothing in Fonseca or Presley's testimony indicates any coercive behavior by law enforcement. As a result, the Court finds that Defendant consented to a search of his jacket and the search was valid. *See United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010) ("It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent.") (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043-44, 36 L. Ed. 2d 854 (1973)).

Moreover, even if the Court were to find that Defendant did not consent to the search of his jacket, the search was nevertheless reasonable. "[I]t is well-settled that it is constitutionally reasonable for law enforcement officials to seize "effects" . . . without a warrant, based on probable cause to believe they contain contraband." *United States v. Jacobsen*, 466 U.S. 109, 121-22, 104 S. Ct. 1652, 1661, 80 L. Ed. 85 (1984). Similarly, it has long been recognized that the need to prevent the imminent destruction of evidence is a sufficient justification for a warrantless search. *Kentucky v. King*,— U.S. —, 131 S. Ct. 1849, 1858, 179 L. Ed. 2d 865 (2011). Defendant allowed Officer Presley and the other officers to enter his home without objection. Based on Mrs. Fonseca's statements to police, Officer Presley knew that there may have been compact discs containing evidence of child abuse in existence and on the premises. As Defendant was in the process of leaving to go to work, Officer Presley observed him behave in a manner that, under the
8

circumstances, caused Officer Presley to reasonably suspect that Defendant may have been in possession of contraband or was attempting to conceal or destroy evidence. Therefore, this Court finds that Officer Presley's search of Defendant's jacket in the driveway of the home was pursuant to a valid concern that Defendant may be attempting to destroy evidence and thus not illegal.

The Court also finds that Officer Presley's seizure of the manilla envelope containing the discs was reasonable and based on reasonable suspicion.

> Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the [Fourth] Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present.

*United States v. Place*, 452 U.S. 692, 701, 101 S. Ct. 2587, 2594, 69 L. Ed. 2d 340 (1983 ). Again, based on Mrs. Fonseca's statements and Officer Presley's knowledge of the circumstances surrounding the alleged abuse, it was entirely within the realm of reason that Officer Presley would suspect the manilla envelope of containing contraband (i.e., child pornography). Because compact discs and DVDs are nothing more than containers of electronic data, Officer Presley was permitted under *Place* to seize the discs pending the issuance of a search warrant to examine the contents of the discs. *See id.* No government official examined or viewed the contents of the discs themselves until after the acquisition of a search warrant. Defendant's motion for the suppression of evidence

should not be sustained on the ground the affidavit search warrant was based on information obtained through an illegal search.[3]

Additionally, the Court finds that, even if the information in the affidavit search warrant was obtained through an illegal search of Defendant's jacket, the remaining statements contained in the affidavit established probable cause to search Defendant's home. In addition to information regarding the search of the Defendant's jacket, the affidavit recounts several statements made by Mrs. Fonseca regarding the alleged abuse. Specifically, the affidavit indicates that Mrs. Fonseca's daughter told her that Defendant had been sexually assaulting her and recording the assaults and that Mrs. Fonseca had located and viewed several DVD's containing footage of the assaults. "[A]bsent specific reasons for police to doubt his or her truthfulness, an ordinary citizen, who provides information to police at a crime scene or during an ongoing investigation, may be presumed credible without subsequent corroboration." *United States v. Blount*, 123 F.3d 831, 835 (5th Cir. 1997). The Court is satisfied that law enforcement had no reason to doubt the credibility of Mrs. Fonseca. None of the evidence presented at the suppression hearing tended or even purported to show that Mrs. Fonseca was unreliable. As a result, Detective Hornsby did not need to corroborate her statements prior to relying upon them in his affidavit and Mrs. Fonseca's statements alone would have given rise to the practical, common-sense determination that contraband or evidence of a crime would

---

[3] At the hearing, Defendant argued that even if Officer Presley's search of the jacket was valid, he nevertheless conducted an illegal search when he peered into the manilla envelope and saw the discs. Because the Court finds that Officer Presley was justified in seizing the manilla envelope under *Place*, regardless of whether he looked inside the envelope, the Court declines to make any findings as to the legality of Officer Presley's peering into the envelope.

probably be found in Defendant's residence. *See Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527 (1983). Thus, Defendant's motion should also fail on the theory that Mrs. Fonseca was not a credible police informant.

Furthermore, even if this Court were to find that the affidavit did not establish probable cause–which is indeed not the finding here–the Court agrees with the Government that the good-faith exception applies so as to render suppression inappropriate. *See United States v. Leon*, 468 U.S. 897, 927, 104 S. Ct. 3405, 3422-23, 82 L. Ed. 2d 677 (1984) (Blackmun, J., concurring) ("[E]vidence obtained in violation of the Fourth Amendment by officers acting in objectively reasonable reliance on a search warrant issued by a neutral and detached magistrate need not be excluded . . . from the case in chief of federal and state criminal prosecutions."). The record, including the evidence and testimony presented at the hearing, is devoid of any indication that the Frisco Police "were dishonest or reckless in preparing their affidavit or [did] not [harbor] an objectively reasonable belief in the existence of probable cause." *Id.* at 468 U.S. 926, 104 S. Ct. at 3422. Rather, the Court finds that the officers executing the search warrant acted in good faith in obtaining and executing the search warrant of Defendant's residence and, consequently, Defendant's motion should be overruled under the *Leon* good-faith exception.

Finally, even if the affidavit search warrant failed to establish probable cause and even if the *Leon* good-fath exception did not apply, the Court finds that search of Defendant's home was nevertheless permissible because Mrs. Fonseca, Defendant's wife, consented to the search. *See United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010). The Supreme Court has made it clear

11

that "[t]he Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained." *Georgia v. Randolph*, 547 U.S. 103, 106, 126 S. Ct. 1515, 1518, 164 L. Ed. 2d 208 (2006) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 110 S. Ct. 2793, 111 L. Ed. 2d 148 (1990)); *United States v. Cooke*, 674 F.3d 491, 496 (5th Cir. 2012) *cert. denied*, 133 S. Ct. 756 (U.S. 2012). The Fifth Circuit has recognized that "there is an 'assumption of risk' of odious persons inside the home when one chooses to live with another and, at times, leave the residence. *Cooke*, 674 F.3d at 499 n.4. But a cotenant who is physically present when his cotenant consents to the search may vitiate that consent by expressing his objection to the search. *Id.* at 499.

The facts of the present case fall squarely within the sights of the preceding rule. As the wife of Defendant and a cotenant of the home they shared, Mrs. Fonseca had every right to consent to a search of the home in the absence of a physically present and objecting Defendant. Mrs. Fonseca's testimony makes clear that she wanted the police to search her home for evidence of the purported crime committed against her daughter by Defendant. Moreover, the evidence adduced at the hearing also indicates that Defendant was not present at the time the search of his home was carried out and as a result could not have voiced any objection to the search while physically present. Thus, the search of Defendant's home should be lawful because Mrs. Fonseca consented to it and Defendant's motion to suppress falters on this ground.

After considering the evidence and testimony presented at the hearing, the Court hereby finds that Defendant's Motion for Suppression of Evidence should be denied.

## **RECOMMENDATION**

The Court recommends that Defendant's Motion for Suppression of Evidence (Dkt. 20) be DENIED.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(c).

Failure to file written objections to the proposed findings and recommendations contained in this report within the time period set forth above shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 3rd day of October, 2013.**

                                                        DON D. BUSH
                                                       UNITED STATES MAGISTRATE JUDGE